## State v. Wright
*[Cite as 8 AOA 85]*

*Case No. 89 CA 55*
*Miami County, (2nd)*
*Decided December 11, 1990*

*Jeffery M. Welbaum, Prosecuting Attorney for Miami County, by James D. Bennett, Assistant Prosecuting Attorney, Miami County Safety Building, 201 West Main Street, Troy, Ohio 45373, Attorneys for Plaintiff-Appellant.*

*William J. Fulker, Faust, Harrelson, Fulker & McCarthy, 12 South Cherry Street, Troy, Ohio 45373 Attorney for Defendant-Appellee.*

GRADY, J.

This appeal is brought by Plaintiff-Appellant State of Ohio, pursuant to Crim. R. 12(J), alleging that the trial court erred in suppressing evidence obtained during a search of a premises occupied by Appellant Wright. The trial court, relying on *Maryland v. Garrison* (1987), 480 U.S. 97, concluded that, though the search warrant was valid on its face, police acted unreasonably when they searched the premises identified in the warrant after they learned that the actual condition of the premises was materially different from that described in the warrant.

For the reasons stated below, we conclude that the trial court did not err in suppressing the evidence seized at Wright's apartment. Upon discovering that the command of the warrant was materially different from the premises encountered, police should have immediately stopped the search. Their failure to do so was constitutionally unreasonable. The decision of the trial court will be affirmed.

### I.

On February 10, 1989, at approximately 3:00 a.m., police officers from several jurisdictions executed a search warrant at 4925 East U.S. Route 36, Fletcher, Ohio. The building located at that address is a white two story structure. The Country Inn tavern is located on the first floor and an apartment is located directly above the tavern on the second floor. Raymond and Mary Ann Felix, owners of the premises and operators of the tavern had, in the past, occupied the apartment. However, in early 1988 they moved next door and on January 10, 1988, rented the apartment to Appellant Jasper Wright.

Shortly after the lease was signed, an interior stairs connecting the tavern with the apartment above was closed (Sup. Hearing Tr. 10). Thereafter, the only means of access to the

apartment was an outside stairway on the west side of the building, opposite the public entrance for the tavern on the east side of the structure (Sup. Hearing Tr. 8). Wright changed the apartment address to 4925 1/2 East U.S. Route 36 and placed this number on the outside door of the apartment. (Sup. Hearing Tr. 8).

During the several years prior to the search, police received information from a reliable informant that the Felixes, who were then living above the tavern, were selling marijuana and cocaine to patrons from inside the Country Inn Tavern. In early February 1989, police learned from a confidential informant that a large quantity of marijuana was seen at the location.

Armed with this information, Detective R. Sweitzer of the Miami County Sheriff's department requested a warrant to search the premises. In addition to detailing the information obtained from the informants, Sweitzer told the magistrate that he had personal knowledge that the Felixes lived above the tavern as he "talk[ed] with Mary Ann Felix and uh her being upstairs when I arrived there and she came down and talked to me *** " (Probable Cause Tr. 3). Sweitzer did not reveal to the magistrate that he had not been in the tavern in over a year or that information from two of his informants was at least a year old. (Sup. Hearing Tr. 40, 41). The application contained no mention of Jasper Wright.

A warrant was issued authorizing a nighttime search of the persons of Raymond and Mary Ann Felix, the "two story residence\business" located at 4925 East U.S. Route 36, and its curtilage. Police were authorized to seize marijuana and its resins, cocaine, records, and related drug paraphernalia. Wright was not mentioned in the warrant.

Upon, arriving at the Country Inn, police first entered the first floor tavern. There, Detective Sweitzer discovered that, unlike his last visit two years earlier, the interior stairway connecting the tavern and the apartment was now closed (Sup. Hearing Tr. 42). Accompanied by other officers, Sweitzer went around the building and up the outside stairs to gain entry to the apartment.

At the apartment, Sweitzer and other officers encountered Wright and demanded that he produce identification. (Sup. Hearing Tr. 12). He complied and produced a valid Ohio drivers' license identifying himself. (Sup.

Hearing Tr. 12, 44). Sweitzer then determined that Wright had rented the apartment and occupied it for approximately ten months, that he was not a subject named in the warrant, and that the Felixes no longer occupied the apartment. (Sup. Hearing Tr. 45, 46).

Nevertheless, Sweitzer and the other officers proceeded to search the apartment on the authority of the warrant. They discovered and seized approximately four pounds of marijuana and a small about of cocaine from Wright's apartment. No drugs or other evidence was seized from the tavern. Wright was arrested and charged with two counts of possessing controlled substances, violations of R.C. 2925.03(A)(6) and R.C. 2925.11(A).

Wright filed a motion to suppress, arguing that the search was unreasonable because the warrant did not comply with the particularity and probable cause requirements of R.C. 2933.23 and 2933.24, and the United States Constitution.

At the suppression hearing, Detective Sweitzer admitted that the warrant did not specifically authorize a search of the apartment (Sup. Hearing Tr. 36). Sweitzer admitted that he knew immediately upon entering the apartment that Wright had lived there for ten months and was not a person named in the warrant (Sup. Hearing Tr. 45). Sweitzer also admitted that no probable cause existed to search Wright, that at the time the warrant was issued he mistakenly believed the Felixes occupied the apartment, but that he felt no need to verify his information (Sup. Hearing Tr. 39-42, 48). Sweitzer stated he did not see the separate address for the apartment and that he believed, notwithstanding his lack of probable cause to search Wright, that the warrant granted him authority to search the entire building, including the apartment (Sup. Hearing Tr. 46).

The trial court suppressed the evidence seized at Wright's apartment finding that:

"*** the officers learned or should have learned when they were executing the warrant that there was no longer an inside access to the upstairs, that there was a separate outside entrance with a different address number for the upstairs apartment, and that the person present and answering the door to the apartment *** was not a person named in the warrant. The officers should have realized that something was wrong and discovered that a

mistake had been made -- they should have discontinued the search at that time."

The State filed a timely notice of appeal pursuant to Crim. R. 12(J), presenting one assignment of error.

II.

The State's sole assignment of error asserts:

"THE TRIAL COURT ERRED IN SUSTAINING APPELLEE'S MOTION TO SUPPRESS EVIDENCE IN FINDING THAT THE MIAMI COUNTY SHERIFF'S DEPARTMENT SHOULD HAVE EXCLUDED THE APPELLEE'S APARTMENT FROM THE SCOPE OF THE SEARCH WARRANT."

The warrant clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." See, also, Article I, Section 14, Ohio Constitution; Crim. R. 41(C); *Cochran v. State* (1922), 105 Ohio St. 541 (Ohio's search and seizure provision is substantially the same as its federal counterpart). The requirement that a warrant describe with particularity the premises or persons to be searched, and items to be seized, ensures that searches do not take the form of a general exploratory search. *Garrison, supra,* at 84; *Andresen v. Maryland* (1976), 427 U.S. 463.

In considering the validity of a search pursuant to a warrant, two separate constitutional issues confront reviewing courts. See, *Garrison, supra,* at 84; *Dalia v. U.S.* (1979), 441 U.S. 238, 258; *U.S. v. Bowling* (C.A. 6, 1990), 900 F.2d 926, 932. First, a reviewing court must determine whether the warrant itself was valid when issued. Here, we must determine whether the warrant was issued by a neutral magistrate, supported by probable cause, and described with particularity the person or place to be searched and things to be seized. See, *Dalia, supra,* at 255. There is no issue regarding the validity of the warrant in those respects.[1]

Second, a reviewing court must then determine whether police executed the warrant in a reasonable manner. Search warrants must be executed in strict compliance with the command contained therein. See, *Ybarra v. Illinois* (1979), 44 U.S. 85. Here we must consider whether police confined the scope of their search to the specific command of the warrant.

*Garrison, supra,* at 86. Police may not conduct a search beyond the warrant's particularized command or rely on coincidental facts to expand a search to include other persons or other premises. Cf., *Ybarra, supra,* at 91; *State v. Henderson* (Mar. 13, 1990), Montgomery App. No. 11531, unreported. Applying this second consideration here, we conclude that the execution of the warrant was unreasonable.

The record shows that when police arrived at 4925 East U.S. Route 36 to execute the warrant they encountered a premises materially different from the premises they were to search under the command of the warrant. Contrary to the warrant and to the information Detective Sweitzer provided the issuing magistrate that the structure was a common premises comprising an apartment and tavern, police found a structure that contained two separate units. Further, the apartment unit was occupied and used as a residence not by a person named in the warrant but by a stranger. Confronted with such obvious and material discrepancies, police should not have searched the apartment as it was manifestly outside the scope of the warrant.

The search is not saved by the fact that the warrant commanded police to search the entire premises at 4925 East U.S. Route 36. Sweitzer's application relied heavily on stale and inaccurate information, a fact not revealed to the magistrate. That failure produced a warrant which incorrectly identified the persons and place to be searched. Once Sweitzer and his colleagues became aware of the error, they were required to act no further in pursuit of the manifestly erroneous command of the warrant. They were not authorized to continue their search, but could have secured the apartment and sought a second warrant or halted the search altogether. Their persistence in knowingly conducting a search which encompassed persons and premises objectively outside the scope of the warrant was unreasonable and in violation of Appellant's rights under the Fourth Amendment to the Constitution of the United States.

Suppression is warranted in these circumstances. We agree with the trial court that a "good faith" test of the officer's conduct under the rule of *United States v. Leon* (1984), 468 U.S. 897, is not warranted when the conduct of the officers who executed the warrant produces the illegality concerned.

The State's sole assignment of error is overruled.

### III.

For the reasons stated above, we conclude the trial court did not err in suppressing evidence seized during the search of Wright's apartment. The judgment of the trial court will be affirmed.

WOLFF, P.J., and FAIN, J., concur.

---

[1] We have not found that the warrant was insufficient for lack of "particularity" because it related its command with sufficient *precision,* which has been the test of particularity for Fourth Amendment purposes. However, *carefulness* is also an element of particularity, and when the information provided the magistrate is inaccurate because it is stale or the product of poor investigation, a failure of constitutional "particularity" might also be argued when the variance between the command of the warrant and the conditions encountered is substantial.